# JUDGE BUCHWALD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



08 CV 5656

-------------------------------------------------X

MARIGOLD ENTERPRISES, INC.,

               Plaintiff,

   - against -

SAPI S.P.A.,

               Defendant.

-------------------------------------------------X

08 Civ.

ECF CASE

## VERIFIED COMPLAINT

Plaintiff, MARIGOLD ENTERPRISES, INC. (hereinafter "Marigold" or "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, SAPI S.P.A. (hereinafter "SAPI" or "Defendant") alleges, upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and this Court's federal question jurisdiction, 28 United States Code § 1331.

2.      At all times material to this action, Marigold was, and still is, a foreign corporation, or other business entity organized and existing under foreign law.

3.      Upon information and belief, SAPI was, and still is, a foreign corporation, or other business entity organized and existing under the laws of Italy.

4.     At all times material to this action, Marigold was the registered owner of the vessel "LIQUID FORTUNE" (hereinafter "the Vessel") which was operated by Elmira Shipping & Trading, S.A. of Greece.

5.     By a fixture recap dated November 19, 2007, (hereinafter "the fixture recap"), Marigold voyage chartered the Vessel to SAPI for the carriage of tallow from Montevideo to Genoa. *A copy of the fixture recap is annexed hereto as Exhibit "1".*

6.     The fixture recap provides for payment of demurrage, *i.e.* liquidated damages for delays in loading and/or discharging, at the rate of $12,500.00 per day.

7.     Marigold delivered the Vessel into the service of SAPI and has at all times fully performed its duties and obligations under the fixture recap.

8.     SAPI completed its voyage charter under the fixture recap. Upon completion of the voyage, SAPI owed Marigold outstanding demurrage in the total amount of $11,067.71. *See Timesheet dated February 26, 2008, attached hereto as Exhibit "2".*

9.     Additionally, upon completion of the voyage, SAPI owed Marigold $3,825.00 for wharfage dues at the discharge port in the amount of $3,825.00.

10.     Marigold presented its claim to SAPI on February 27, 2008, requesting payment of outstanding demurrage and wharfage dues in the amount of $14,892.70.

11.     Marigold followed up on the invoice with several electronic mail messages to SAPI requesting payment of the outstanding invoice. Despite due demand, SAPI has failed to pay the outstanding amount of $14,892.70.

12.     SAPI has breached the terms of the fixture recap by refusing and/or failing to pay outstanding demurrage and berthing dues due and owing to Marigold.

13.     Pursuant to the fixture recap, disputes between the parties are to be submitted to

arbitration in London with English law to apply. Marigold will commence arbitration after the commencement of this action and jurisdiction is obtained over SAPI.

14.     This action is brought in order to obtain jurisdiction over SAPI and also to obtain security for Marigold's claims and in aid of London arbitration proceedings.

15.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party.

16.     As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| a. | Plaintiff's Principal Claim: | $14,892.70; |
| b. | Interest for 2 years, compounded quarterly at 7%: | $2,217.25; |
| c. | Estimated arbitration costs: | $3,000.00; |
| d. | Estimated recoverable legal fees and costs: | $5,000.00; |
| **Total:** | | **$25,109.95** |

17.     The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendant. *See Affidavit in Support of Prayer for Maritime Attachment annexed hereto as Exhibit "3"*.

18.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any proeprty of the

Defendant held by any garnishee within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claims as described above.

      **WHEREFORE**, Plaintiff prays:

      A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

      B.     That pursuant to 9 U.S.C. §§ 201. *et seq.* and/or the doctrine of comity this Court recognize and confirm any foreign judgment or arbitration award rendered on the claims had herein as a Judgment of this Court;

      C.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendant within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendant, up to the amount of **$25,109.95** to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

      D.     That this Court enter Judgment against Defendant on the claims set forth herein;

      E.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

      F.     That this Court award Plaintiff its attorney's fees and costs of this action; and

    G.    That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: June 23, 2008
       Southport, CT

                           The Plaintiff,
                           MARIGOLD ENTERPRISES, INC.

            By: _____
                        Charles E. Murphy
                        Anne C. LeVasseur
                        LENNON, MURPHY & LENNON, LLC
                        420 Lexington Ave., Suite 300
                        New York, NY 10170
                        (212) 490-6050 – phone
                        (212) 490-6070 – fax
                        cem@lenmur.com
                        acl@lenmur.com

## **ATTORNEY'S VERIFICATION**

State of Connecticut   )
                 )    ss.:    Town of Southport.
County of Fairfield   )

1.     My name is Charles E. Murphy.

2.     I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3.     I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4.     I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5.     The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6.     The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated:       Southport, CT
              June 23, 2008

Charles E. Murphy

# EXHIBIT 1

From: "Doric Shipbrokers S.A." <tankers@doric.gr>
To: chartering@elmira.gr
Subject: LgINT Message (REF:07E211800)
CC: <No CC specified>
Date: Mon, 19 Nov 2007 23:35:02 +0200

TELiX MSG: E2118-00 19/11/07 23:35

Att Chart dpt

Pleased to recap the following clean fixture with all subjs in
order concluded today November 19, 2007

-Chrtr: Sapi Spa
-Owner: Marigold enterprises inc.,
-Vessel: MT Liquid Fortune

M/T LIQUID FORTUNE/2000 BLT
DWT 11,747 ON 8.76M SUMMER DRAFT IMO TYPE 2 (DOUBLE HULL)
STAINLESS STEEL TANKS/11,751 M3 (98%) + SLOP TANKS 539 M3 (98%)
FLAG: MARSHALL ISLANDS; CLASS; NKK
ADA/WOG

Last 3 cargoes: clean and unleaded and first last cargo not on the
fosfa
banned list

Itinerary: Vessel loading Upriver Argentina, eta Montevideo November
23-24.

For

- Cargo: p/c minimum 1,500 mt 2 grds tallow, 2pct more in chopt (chrts
  intended splits 1000+500 mt which owners confirm they can stow)
- Loading: 1sp/1sb Montevideo
- Disch: 1sp/1sb Genoa - where no low flash cargo allowed in transit or
  in chopt 1sb Ravenna - where no low flash cargo allowed in transit
- Laycan: November 22-26, 2007
- Freight rate: usd 80.00 pmt basis Genoa Disch; usd 85.00 pmt basis
  Ravenna Disch
- Laytime: 125/100 mtph load/disch rev shinc
- Demurrage: usd 12,500 pdpr
- Vegoilvoy cp
- All other terms as per Liquid Crystal / Sapi cp Dec 1, 2006 (below)
- General Average / arb London - English law
- York/Antwerp 94 rules to apply
- vessel free of any extra insurance premium due to vessel's
  age/class/flag/ownership
- Warrisk, if any, for charts account
- Owners to appoint and employ Charterers nominated agent at loadport,
  provided competitive
  Chrts agents at load:
  Christophersen SA.
  Telephone +598 2 916 0109
  Fax +598 2 916 9243
  Email chris@christophersen.com.uy

```
Telex(USA Code) 401390234
Telex 23 400396234
Address
Rincon 550
11000
Uruguay
```
- Owners to appoint and employ Charterers nominated agent at dischport, provided competitive
- Cleaning to Charterer's Independent Inspector's Satisfaction
- Freight is payable in usd 100 pct w/i 5 usa bdays from sailing loadport
- Freight deemed earned upon loading discountless and non refundable vessel and/or cargo lost or not lost
- any taxes and/or dues on cargo and/or frt to be for charts acc
  any taxes and/or dues on vsl to be for owners acc
- Brazilian tax clause:
  Any taxes and/or dues on cargo and/or freight including but not limited to port utilization tax/brazilian port substructure/infraport and inframar taxes including merchant marine renewal tax and wharfage to be for chrts account and to be settled by directly by them.
- Demurrage time bar: 90 days from date of completion of discharge
- Commission 3.75 pct ttl dtc on f/d/d (2.5% to sound tankers)
- Sapi Rider terms as agreed in Liquid Crystal/Sapi Charter Party dated Dec 1, 2006 (below) but with the following amendments:

Cls in full below:

1.    ANY CLAIM FOR DEMURRAGE INCURRED MUST BE SUBMITTED WITH SUPPORTING DOCUMENTS PRIOR TO 90 DAYS AFTER COMPLETION OF DISCHARGE, OR THE CLAIM WILL BE CONSIDERED NULL AND VOID.

2.    OWNERS TO GIVE VESSEL'S ETA LOADPORT UPON FIXING, TOGETHER WITH VESSEL'S FULL ITINERARY. OWNER/MASTER TO GIVE CHARTERERS AS APPLICABLE DAYS NOTICE AT LOAD AND DISCHARGE PORT(S). DURING LADEN VOYAGE MASTER TO
GIVE ETA'S EVERY 3 DAYS.

3.    WAITING TIME AND/OR TIME ON DEMURRAGE: IF VESSEL LOADS OTHER CARGOES AT SAME LOAD BERTH(S) - WAITING TIME AND/OR TIME ON DEMURRAGE, IF ANY - IS TO BE SHARED PRO RATA, CALCULATED OVER THE QUANTITIES LOADED ON BOARD BETWEEN THE DIFFERENT CHARTERERS, UNLESS ATTRIBUTABLE TO A SPECIFIC CHARTERER. THIS CLAUSE TO BE ALSO APPLICABLE IF VESSEL DISCHARGES OTHER CARGOES AT SAME DISCHARGE BERTH(S).

4. delete

5.    CONOCO WEATHER CLAUSE: ANY DELAYS IN BERTHING AT LOAD OR DISCHARGE PORT(S), AND ANY DELAYS AFTER BERTHING THAT ARE DUE TO WEATHER
SHALL COUNT AS ONE-HALF LAYTIME IF THE VESSEL IN ON LAYTIME AND ONE-HALF
DEMURRAGE IF THE VESSEL IS ON DEMURRAGE.

6.    HEATING: CARGO TO BE HEATED TO CHARTERER'S OR CHARTERER'S INSPECTOR'S INSTRUCTIONS WHICH TO BE ADVISED UPON LIFTING SUBS.

7.    OWNER'S GUARANTEE: VESSEL WILL COMPLY WITH ALL

INTERNATIONAL, FEDERAL AND LOCAL REGULATIONS AND TO HAVE ONBOARD AT ALL
TIMES A VALID IMCO CERTIFICATE.

8.            ELIGIBILITY: OWNER WARRANTS THAT THE VESSEL IS IN ALL
RESPECTS ELIGIBLE FOR TRADING WITHIN, TO AND FROM RANGES AND AREAS
SPECIFIED IN THIS CHARTER PARTY, AND AT ALL NECESSARY TIMES VESSEL
SHALL
HAVE ONBOARD ALL CERTIFICATES, RECORDS AND OTHER DOCUMENTS REQUIRED FOR
SUCH SERVICE.

9.    IF REQUIRED BILLS OF LADING TO BE MARKED ''CLEAN ONBOARD'' AND
SAME
TO BE SIGNED BY OWNERS ACCORDINGLY. ''CLEAN'' IN THIS CONTEXT REFERS TO
THE CONDITION OF THE DOCUMENTATION I.E. A CLEAN BILL OF LADING WITHOUT
CLAUSES OR BLEMISHES OR EXCEPTIONS UPON IT. ''CLEAN'' IN THIS CONTEXT
DOES NOT REFER TO THE QUALITY/QUANTITY OR CONDITION OF THE COMMODITY.

IF CHARTERERS REQUIRE "FREIGHT PREPAID B/L'S THEN SAME TO BE RELEASED
BY
OWNERS

AGAINST A FAXED COPY OF THE SWIFT TRANSFER DOCUMENT.

10.   IF BILLS OF LADING ARE NOT AVAILABLE AT THE DISCHARGE PORT, OWNERS
TO RELEASE CARGOES AGAINST RECEIPT OF CHARTERER'S LETTER OF INDEMNITY
IN
THE FORM OF OWNER'S P AND I CLUB APPROVED WORDING DULY SIGNED AND
STAMPED BY
CHARTS PIC IN CHARTS LETERHEAD, BUT SAME WITHOUT BANK
GUARANTEE.

11.   ALL NEGOTIATING AND DETAILS RESULTING IN THIS FIXTURE TO BE KEPT
STRICTLY PRIVATE AND CONFIDENTIAL BY ALL PARTIES INVOLVED.

12. CHARTER PARTY ADMINISTRATION CLAUSE
UNLESS OTHERWISE SPECIFICALLY REQUESTED BY EITHER OWNERS OR CHARTERERS,
NO FORMAL CHARTERPARTY SHALL BE PREPARED AND SIGNED. THE TERMS AND
CONDITIONS OF THIS CHARTER SHALL BE EVIDENCED BY A FIXTURE RECAP SENT
BY
CHARTERERS' BROKER TO OWNERS AND CHARTERERS.


Following owners additional protective clauses to be included in this
cp

1. Samples
Charterer to place their cargo(s) samples on board vessel upon
completion of load. Owner to deliver samples to Charterer's
Representative/Surveyor at Discharge. In both cases, vessel to obtain a
signed receipt for samples.

2.IN CASE OF DISPUTE CHARTERERS TO PAY IN FULL WITHIN 45 DAYS THE
UNDISPUTED
AMOUNT. THE DISPUTED AMOUNT TO BE SETTELED AMICABLY AND ULTIMATELY IN
ARBITRATION. SHOULD ANY DISPUTED AMOUNT BE LESS THAN 50,000 THE
L.M.A.A.
SMALL CLAIMS PROCEDURES TO APPLY. CHARTERERS TO REMAIN ULTIMATELY

RESPONCIBLE FOR DEMURRAGE PAYMENT. IF NO COMMENTS ON ANY DISPUTE
(DEMURRAGE
OR NOT) HAVE NOT BEEN RECEIVED BY OWNERS FROM CHARTS WITHIN THE 30 DAYS
AFTER OWNERS SUBMITT A CLAIM IT WILL BE UNDERSTOOD THAT THE FULL CLAIM
HAS
BEEN ACCEPTED BY CHARTS AND PAYMENT TO BE RECEIVED BY OWNERS IN FULL 15
DAYS
THEREAFTER.

3.Bimco Double Banking Clause to Apply

4.Bimco Standard ISPS Clause for Voyage Charter Parties to apply

5. shifting
If charterers choose to shift the vessel to other berth(s) at the same
port shifting charges to be for charterer's account and time to count
as
laytime bends. Vessels to be left in seaworthy trim for all passage
between berths.

6.bs/l incorporated clauses
following clauses to be incorporated in the B/L's and apply to
this charter party:
New Jason Clause
Both to Blame Collision Clause

7. Not withstanding the above clause 2, demurrage, if any incurred
prior to the completion of the voyage same to be paid by
charts every 5 days to owners bank.

OWNERS ADDITIONAL CLAUSES (BELOW) BUT AMENDED AS FOLLOWS:

A.

COMPLETION - ROTATION - SEGREGATION
If cargo carried under this Charter is less than the Vessel's full
Deadweight capacity (part cargo), the Owner has the option of loading
other cargo(es)either before or after loading cargo under this Charter
at same or other port(s) for discharge at same or other port(s) for own
or other account. Rotation between loading ports and berths, and
between
discharging ports and berths shall be at Owner's option.  The Owner
undertakes to keep part cargo completely segregated from other cargo on
board the Vessel.

B.
NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CONTRACT, THE OWNER
SHALL HAVE THE RIGHT TO NOMINATE ANOTHER COMPANY DIRECTLY OR INDIRECTLY
OWNED OR CONTROLLED IN WHOLE OR IN PART BY THE OWNER OR ITS ULTIMATE
HOLDING COMPANY TO PERFORM ITS OBLIGATIONS HERUNDER, AND AT ANY TIME
SUBSTITUTE ANY VESSEL FOR ANOTHER FOR THE PERFORMANCE OF ALL OR PART OF
THIS CONTRACT, WHICH SUBSTITUTE VESSEL MAY BE OWNED OR CHARTERERED IN
BY
THE OWNER. OWNER SHALL ALWAYS REMAIN RESPONSIBLE FOR THE FULFILMENT OF
THIS CHARTER IN ALL ITS TERMS AND CONDITIONS.

C.
Hoses for loading and discharging shall be furnished by the Charterer
and Shall be connected and disconnected by the Charterer at its risk
and
expense.

D. Deelete in full

End

Best Regards,


--
<ATTACHMENT(S) Written to: F:\SOFT32\ATTMAIL>
F:\SOFT32\ATTMAIL\ffe-4650-9cb9-52d67dc54618 3.tif

# EXHIBIT 2

# ELMIRA SHIPPING AND TRADING S.A.

## TIME SHEET

Voyage:SAPI cp dd 19/11/07

| Vessel: | M/T LIQUID FORTUNE | Ports: | Montevideo-Genoa | Date: 2/26/2008 |
|---|---|---|---|---|

| Load Port - Montevideo | | Date | Hour | | |
|---|---|---|---|---|---|
| Vessel arrived | - | 26/11/07 | 07:00 | Total cargo | 1,500.000 |
| Notice served | - | 26/11/07 | 07:30 | Laytime agreed | 1.1250 |
| Time to commence | - | 26/11/07 | 13:30 | Time used | 2.0104 |
| Commenced loading | - | 26/11/07 | 21:45 | Holidays | SHINC REV. |
| Cargo docs on board | - | 27/11/07 | 12:00 | Demmurage rate | $12,500.00 |

| D/port - Genoa | | | |
|---|---|---|---|
| Vessel arrived | - | 06/01/08 | 12:00 |
| Vessel berthed | | 07/01/08 | 07:00 |
| Notice served | | 06/01/08 | 12:00 |
| Time to commence | | 06/01/08 | 18:00 |
| Commenced discharging | | 07/01/08 | 09:40 |
| Hose disconnected | | 07/01/08 | 19:45 |

| Day | Date | Laytime | | | | DD. | HH. | MM. | DD. | HH. | MM. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | From | | To | | | | | | | |
| | | HH | MM | HH | MM | | | | | | |
| Load Port Montevideo | | | | | | | | | | | |
| Monday | 26/11/07 | 13 | 30 | 24 | 00 | | 10 | 30 | | | |
| Tuesday | 27/11/07 | 00 | 00 | 12 | 00 | | 12 | | | | |
| | | | | | | | | | | | |
| Disport Genoa | | | | | | | | | | | |
| Sunday | 06/01/08 | 18 | 00 | 22 | 30 | | 04 | 30 | | | |
| vsl on demurrage | 06/01/08 | 22 | 30 | 24 | 00 | | 01 | 30 | | | |
| Monday | 07/01/08 | 00 | 00 | 19 | 45 | | 19 | 45 | | | |

| | 2 | | 15 | | |
|---|---|---|---|---|---|
| | 2.010416667 | 0.2500 | 0.2500 | | |
| Demurrage | = Days @ 0.8854 | | = | $11,067.71 | |

9-11 Ethinikis Antistaseos street, Halandri 152 32, Greece
Phone:+30.210.6800929, Fax: +30.210.6800928, Telex: 220612 ELMI GR

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MARIGOLD ENTERPRISES, INC.,                  :
                                             :
                        Plaintiff,           :          08 Civ.
                                             :
        - against -                          :          ECF CASE
                                             :
SAPI S.P.A.,                                 :
                                             :
                        Defendant.           :
-------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut    )
                        )       ss:  Town of Southport
County of Fairfield     )

        Charles E. Murphy, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein.  I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

        2.      I have attempted to locate the Defendant, SAPI S.P.A., within this District.  As

part of my investigation to locate the Defendant within this District, I checked the telephone

company information directory, as well as the white and yellow pages for New York listed on

the Internet or World Wide Web, and did not find any listing for the Defendant.  I also performed

a Google search on the Internet.  Finally, I checked the New York State Department of

Corporations' online database which showed no listings or registration for the Defendant.

        3.      I submit based on the foregoing that the Defendant cannot be found within this

District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

5.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy Peterson or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, be and is hereby appointed, in addition to the United States Marshal, to serve the Process of Maritime Attachment and Garnishment and/or the Verified Complaint, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendant.

6.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

7.    To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple

delivery of the Process of Maritime Attachment and Garnishment to the various garnishes to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

8.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

9.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served through the next day, provided that process is served the next day, to authorize service of process via facsimile or e-mail following initial *in personam* service.

Dated: June 23, 2008
        Southport, CT

Charles E. Murphy

Sworn and subscribed to before me
This 23rd day of June 2008,

Notary Public/Commissioner of Superior Court